**JACKSON LEWIS P.C.**
Jonathan R. Cavalier (PA No. 206063)
Morgan D. Hollander (PA No. 328938)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319- 7802
jonathan.cavalier@jacksonlewis.com
morgan.hollander@jacksonlewis.com

*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| POWER HOME REMODELING GROUP, LLC, a Pennsylvania limited liability company, | : : : : : | Hon._____, U.S.D.J. |
| Plaintiff, | : : | Docket No.: _____ |
| v. | : : |  |
| JON STUCKENSCHNEIDER, | : : |  |
| Defendant. | : : : |  |

## NOTICE AND PETITION FOR REMOVAL

To:    Kate Barkman, Clerk of Court
       U.S. District Court for the Eastern District of Pennsylvania
       2609 U.S. Courthouse
       601 Market Street
       Philadelphia, Pennsylvania 19106-1797

       Lawrence H. Pockers, Esq.
       Bryan N. Shapiro, Esq.
       Duane Morris LLP
       30 South 17th Street
       Philadelphia, PA 19103
       lhpockers@duanemorris.com
       bshapiro@duanemorris.com

Defendant Jon Stuckenschneider ("Defendant"), by and through its attorneys of record, Jackson Lewis P.C., hereby remove the action captioned *Power Home Remodeling Group, LLC, a Pennsylvania limited liability Company v. Jon Stuckenschneider* filed by Plaintiff Power Home Remodeling Group, LLC ("Plaintiff" or "PHRG"), bearing Docket Number 2023-04541-CT and currently pending in the Court of Common Pleas, Chester County (the "State Court Action"), to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441 and 1446. The grounds for removal are as follows:

1.      On June 27, 2023, Plaintiff commenced the State Court Action by filing a Complaint against Defendant alleging claims for breach of contract, breach of fiduciary duty, conversion, unfair competition and unjust enrichment arising out of Defendant's alleged violation of his post-employment obligations to Plaintiff.

2.      Plaintiff served a copy of the Complaint upon Defendant via mail on July 11, 2023, which Defendant received on July 25, 2023.

3.      To date, Defendant has not filed anything with the State Court, including its response to the Complaint, which is currently due to be filed on or before August 14, 2023.

4.      Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Defendant in the State Court Action are annexed hereto. A true and accurate copy of the Complaint is annexed hereto as Exhibit A. These documents constitute all "processes, pleadings and orders" served upon Defendant in the State Court Action to date.

5.      Pursuant to 28 U.S.C. § 1446(b), this Notice of Removal has been timely filed, *i.e.*, within thirty (30) days after service of the Complaint on July 25, 2023.

6.     Defendant is entitled to remove the State Court Action to this Court pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between Plaintiff and Defendant and the amount in controversy exceeds $75,000.

7.     As set forth in the Complaint, Plaintiff is a Pennsylvania limited liability company that maintains its principal place of business at 2501 Seaport Drive, Suite B110, Chester, Pennsylvania 19013.

8.     Conversely, Defendant is a citizen of the State of Colorado, residing at 1980 18th Street, Unit 620, Denver, Colorado 80202. *See* 28 U.S.C. § 1332(c)(1).

9.     Accordingly, there is complete diversity of citizenship between Plaintiff (a citizen of Pennsylvania) and Defendant (a citizen of Colorado).

10.    As noted above, the Complaint asserts claims for breach of contract, breach of fiduciary duty, conversion, unfair competition and unjust enrichment. (Compl. ¶¶ 50, 56-57, 60, 72-73, 78-79).

11.    The entire amount in controversy, while not specifically enumerated in Plaintiff's Complaint, appears to contemplate an amount exceeding the amount in controversy requirement as described below. *See Ciancaglione v. Sutherlin*, 2004 U.S. Dist. LEXIS 18589, at *3 (E.D. Pa. September 13, 2015) ("When, as here, the parties are citizens of different states, this Court has diversity jurisdiction if the amount in controversy exceeds $75,000."). When removal is based on 28 U.S.C. § 1332(a), and the plaintiff does not specifically delineate damages sought in the complaint, courts must measure the amount by a reasonable assessment of the claim at issue.   28 U.S.C. § 1446(c)(2); *see also Werwinski v. Ford Motor Co.¸* 286 F.3d 661, 666 (3d Cir. 2002) (finding that district courts must measure the amount in controversy "not . . . by the low end of an open-ended claim, but rather by a reasonable reading of the value of the rights being litigated")

(quoting *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993)). In this matter, a reasonable reading of the Complaint supports Defendant's position that the amount in controversy exceeds $75,000.

12.    Here, Plaintiff seeks to recover "actual damages as may be established at trial, including compensatory damages, as well as incidental and consequential damages, exemplary and/or punitive damages, and any other damages as permitted by law," and "PHRG's reasonable attorneys' fees, costs of suit, and expenses." (Compl. ¶ "Prayer for Relief").

13.    Moreover, in connection with these claims, Plaintiff alleges it "has suffered, and will continue to suffer, damages including monetary damages, attorneys' fees and costs, as a direct result of Defendant's unlawful activities" as well as "lost profits that PHRG would have received from the exclusive use of its own developed customer-prospecting materials and damage to its goodwill and reputation." (Compl. ¶¶ 58, 63, 74, 80). In matters involving claims for conversion and unjust enrichment, the Eastern District of Pennsylvania has held that the amount in controversy could exceed $75,000 where the plaintiffs sought – as PHRG seeks here – compensatory and consequential damages, lost revenue and harm to its reputation, and punitive damages with respect to the conversion claim. *APT Sys. v. Apple, Inc.*, 2022 U.S. Dist. LEXIS 13823, at *22-23 (E.D. Pa. Jan. 26, 2022).

14.    Moreover, Plaintiff here seeks reasonable attorneys' fees, and "in calculating the amount in controversy, [a Court] must consider potential attorney's fees." *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997).  For purposes of determining the amount of attorney's fees relative to the amount in controversy, courts in this district have determined that the "median in the Third Circuit is roughly thirty percent (30%)" of the asserted damages and applied that rate.

*Mazzucco v. Kraft Foods Global, Inc.*, 2011 U.S. Dist. LEXIS 150217, at \*31 (D.N.J. Nov. 23, 2011).

15.     Inasmuch as Plaintiff is asserting that the damages exceed the arbitration limits of $50,000, it is more than plausible that the amount in controversy for Plaintiff's claims against Defendant exceeds $75,000.[1] *See Dart Cherokee Basin Operation Co. v. Owens*, 135 S. Ct. 547, 554 (2014) ("[D]efendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.").

16.     Accordingly, this action is one over which the United States District Court has original jurisdiction under 28 U.S.C. § 1332(a) because there is diversity of citizenship among all parties in the State Court Action and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

17.     The Court of Common Pleas, Chester County is located within the district of the United States District Court for the Eastern District of Pennsylvania.  As such, venue is proper because the State Court Action lies within the "district and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).

18.     Venue is also proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions alleged in the Complaint occurred within that judicial district.

---

[1] Defendant denies the validity and merit of Plaintiff's claims, including the damages claimed, the legal theory upon which its claims are purportedly based, and the claims for monetary and other relief that flow from them, but properly uses Plaintiff's alleged theories to demonstrate that it is more probable than not the amount in controversy exceeds $75,000. *See Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir. 1999) (determining amount in controversy at time of removal).

19.     Pursuant to 28 U.S.C. § 1446(d), Defendant will promptly give written notice of this Notice of Removal to Plaintiff's counsel of record and will file a copy of this Notice of Removal with the clerk of the state court in which the State Court Action is currently pending.

20.     This Notice of Removal is filed in compliance with Rule 11 of the Federal Rules of Civil Procedure.

21.     Defendant reserves all defenses currently available to him, including but not limited to, those under Rule 12(b) of the Federal Rules of Civil Procedure and does not waive said defenses by the filing of the instant Notice of Removal.

**WHEREFORE**, based on the foregoing, Defendant hereby removes the State Court Action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

**JACKSON LEWIS P.C.**

*/s/ Jonathan R. Cavalier*
Jonathan R. Cavalier (PA No. 206063)
Morgan D. Hollander (PA No. 328938)
Three Parkway
1601 Cherry Street, Suite 1350
Philadelphia, PA 19102
T: (267) 319- 7802
jonathan.cavalier@jacksonlewis.com
morgan.hollander@jacksonlewis.com

*Attorneys for Defendant*

Dated: July 27, 2023

4886-9788-2482, v. 1

6

# EXHIBIT A

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

# DuaneMorris®

*FIRM and AFFILIATE OFFICES*

LAWRENCE H. POCKERS
DIRECT DIAL: +1 215 979 1153
PERSONAL FAX: +1 215 689 3761
*E-MAIL:* LHPockers@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NEWARK
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR

ALLIANCES IN MEXICO

July 11, 2023

VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

Mr. Jon Stuckenschneider
1980 18th Street, Unit 620
Denver, Colorado 80202

> Re:    **Power Home Remodeling Group, LLC v. Jon Stuckenschneider,
> Case No. 2023-04541-CT, Court of Common Pleas of Chester County,
> Pennsylvania**

Dear Mr. Stuckenschneider:

Please see the attached Complaint that was filed against you in the Chester County Court of Common Pleas.

Sincerely,

*/s/ Lawrence H. Pockers*

Lawrence H. Pockers

LHP
Attachment

Supreme Court of Pennsylvania
Court of Common Pleas
Civil Cover Sheet
CHESTER County

| For Prothonotary Use Only: |
| Docket No: |
| 2023-04541-CT |

Filed and Attested by
PROTHONOTARY
27 Jun 2023 09:55 AM
C. Luna-Valenta

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**Commencement of Action**

| S E C T I O N  A | ✓ Complaint | Writ of Summons | Petition |
| | Transfer from Another Jurisdiction | | Declaration of Taking |

| Lead Plaintiff's Name: | Lead Defendant's Name: |
| POWER HOME REMODELING GROUP, LLC | JON STUCKENSCHNEIDER |

| Are money damages requested? ✓ Yes ___ No | Dollar Amount Requested: | ___ Within arbitration limits |
| | (check one) | ✓ outside arbitration limits |

| Is this a Class Action Suit?  ___ Yes  ✓ No | Is this an MDJ Appeal?  ___ Yes  ✓ No |

Name of Plaintiff's/Appellant's Attorney: Bryan Shapiro

___ Check here if you have no attorney(are a Self-Represented [Pro Se] Litigant)

**Nature of the Case:**  Place "X" to the left of the **ONE** case category that most accurately describes your *PRIMARY CASE.*
If you are making more than one type of claim, check the one that you consider most important.

**TORT***(do not include Mass Tort)*
___ Intentional
___ Malicious Prosecution
___ Motor Vehicle
___ Nuisance
___ Premises Liability
___ Product Liability*(does not include mass tort)*
___ Slander/Libel/Defamation
___ Other:

**MASS TORT**
___ Asbestos
___ Tobacco
___ Toxic Tort - DES
___ Toxic Tort - Implant
___ Toxic Waste
___ Other:

**PROFESSIONAL LIABILITY**
___ Dental
___ Legal
___ Medical
___ Other Professional

**CONTRACT***(do not include Judgments)*
___ Buyer Plaintiff
___ Debt Collection: Credit Card
___ Debt Collection: Other
___ Employment Dispute: Discrimination
___ Employment Dispute: Other
✓ Other

**REAL PROPERTY**
___ Ejectment
___ Eminent Domain/Condemnation
___ Ground Rent
___ Landlord/Tenant Dispute
___ Mortgage Foreclosure: Residential
___ Mortgage Foreclosure: Commercial
___ Partition
___ Quiet Title
___ Other:

**CIVIL APPEALS**
Administrative Agencies
___ Board of Assessment
___ Board of Elections
___ Dept. of Transportation
___ Statutory Appeal: Other
___ Zoning Board
___ Other:

**MISCELLANEOUS**
___ Common Law/Statutory Arbitration
___ Declaratory Judgement
___ Mandamus
___ Non-Domestic Relations
___ Restraining Order
___ Quo Warranto
___ Replevin
___ Other:

*2023-04541-CT*

**Chester County**
**Court of Common Pleas** Docket No:
**Cover Sheet**

2023-04541-CT

| Plaintiff(s): (Name, Address) | Plaintiff's/Appellant's Attorney(circle one) |
|---|---|
| POWER HOME REMODELING GROUP, LLC<br>2501 SEAPORT DRIVE, SUITE B110   CHESTER, PA  19013 | (Name, firm, address, telephone and attorney ID#)<br>**Bryan Shapiro**<br>(215) 979-1575 Duane Morris LLP attorney ID#: 329241<br>30 S. 17th Street, Philadelphia, PA 19103, US |
| Defendant(s): (Name, Address)<br>JON STUCKENSCHNEIDER<br>1980 18TH STREET, UNIT 620   DENVER, CO  80202 | Are there any related cases? Please provide case nos. |

Defendants who are proceeding without counsel are strongly urged to file with the Prothonotary a written statement of an address AND a telephone number at which they can be reached

Commencement of Action (if applicable):   Agreement for an Amicable Action __ Motion to Confirm Arbitration Award
Notice of Appeal

If this is an appeal from a Magisterial District Judgement, was appellant __ Plaintiff or __ Defendant in the original action?

Jury Trial Demanded ✓ Yes    No

Nature of case if not on previous cover sheet - Please choose the most applicable

| | |
|---|---|
| __ Annulment | __ Writ of Certiorari |
| __ Custody - Conciliation Required | __ Injunctive Relief |
| __ Custody - Foreign Order | __ Mechanics Lien Claim |
| __ Custody - No Conciliation Required | __ Issuance of Foreign Subpoena |
| __ Divorce - Ancillary Relief Request | __ Name Change |
| __ Divorce - No Ancillary Relief Requested | __ Petition for Structured Settlement |
| __ Foreign Divorce | |
| __ Foreign Protection from Abuse | |
| __ Paternity | |
| __ Protection from Abuse | |
| __ Standby Guardianship | |

**Arbitration Cases Only**

Arbitration Date    mm/dd/yyyy

Arbitration Time    hh:mm:ss

Defendants are cautioned that the scheduling of an arbitration date does not alter the duty of the defendant to respond to the complaint and does not prevent summary disposition form occurring prior to the arbitration date.

This matter will be heard by a Board of Arbitrators at the time and date specified but, if one or more of the parties is not present at the hearing, the matter may be heard at the same time and date before a judge of the court without the absent party or parties. There is no right to a trial *de novo* on appeal from a decision entered by a judge.

**Notice of Trial Listing Date**

Pursuant to C.C.R.C.P. 249.3, if this case is not subject to compulsory arbitration it will be presumed ready for trial twelve (12) months from the date of the initiation of the suit and will be placed on the trial list one (1) year from the date the suit was filled unless otherwise ordered by the Court.

To obtain relief from automatic trial listing a party must proceed pursuant to C.C.R.C.P. 249.3(b), request an administrative conference and obtain a court order deferring the placement of the case on the trial list until a later date.

**File with:** Chester County Justice Center, Prothonotary Office, 201 W. Market St., Ste. 1425, PO Box 2746, West Chester, PA 19380-0989

*2023-04541-CT*

Case 2:23-cv-02880-JDW    Document 1    Filed 07/27/23    Page 11 of 30

These cover sheets must be served upon all other parties to the action immediately after filing.

Submit enough copies for service.

2023-04541-CT

**DUANE MORRIS** LLP 

By:    Lawrence H. Pockers, Esq. (PA No. 84589) 
Bryan Shapiro, Esq. (PA No. 329241)
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000
Fax: (215) 979-1020
Email: lhpockers@duanemorris.com
bshapiro@duanemorris.com

*Attorneys for Plaintiff*
*Power Home Remodeling Group, LLC*

---

| | |
|---|---|
| **POWER HOME REMODELING GROUP, LLC,** a Pennsylvania limited liability company, | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA |
| Plaintiff, | CIVIL ACTION |
| v. | NO. _____ |
| **JON STUCKENSCHNEIDER,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

---

### NOTICE TO DEFEND

You have been sued in Court If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the Court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THESE PAPERS TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER. IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
Chester County Bar Association
15 West Gay Street
West Chester, PA. 19381
(610) 429-1500

2

**DUANE MORRIS** LLP
By:    Lawrence H. Pockers (PA No. 84589)
       Bryan Shapiro (PA No. 329241)
       30 South 17th Street
       Philadelphia, PA 19103
       Tel: (215) 979-1000
       Fax: (215) 979-1020
       Email: lhpockers@duanemorris.com
              BShapiro@duanemorris.com



*Attorneys for Plaintiff*
*Power Home Remodeling Group, LLC*

| | |
|---|---|
| **POWER HOME REMODELING GROUP, LLC,** a Pennsylvania limited liability company, | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA |
| Plaintiff, | CIVIL ACTION |
| v. | NO. _____ |
| **JON STUCKENSCHNEIDER,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT

Plaintiff Power Home Remodeling Group, LLC ("Plaintiff" or "PHRG"), by and through its undersigned counsel, Duane Morris LLP, hereby files this Complaint against its former employee, Defendant Jon Stuckenschneider ("Stuckenschneider" or "Defendant"). In violation of his post-employment obligations to PHRG, including those in a contract he signed as a condition of employment, Defendant has engaged in a pattern of unfair competition on behalf and for the benefit of himself and a direct competitor, Rise Renovation, LLC ("Rise").

## PARTIES

1.    Plaintiff PHRG is a Pennsylvania limited liability company that maintains its principal place of business at 2501 Seaport Drive, Suite B110, Chester, PA 19013.

3

*2023-04541-CT*

2.    Defendant Jon Stuckenschneider is an individual and a citizen of Colorado, who is last known to reside at 1980 18th Street, Unit 620, Denver, Colorado 80202.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5301(a)(1) because Defendant consented to jurisdiction in Pennsylvania in his Confidential Information, Intellectual Property and Restrictive Covenant Agreement (the "Agreement") with PHRG. *See* **Exhibit A** at page 4, paragraph 1.[1]

4.    The Court also has jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5322(a)(1) and 5322(b) because Defendant had systematic and continuous contact with Pennsylvania during the course of his employment with PHRG.

5.    This Court also has jurisdiction over Defendant pursuant to 42 Pa. C.S. § 5322(a)(4) and 5322(b) because Defendant has caused harm or tortious injury to PHRG in this Commonwealth by acts and omissions performed outside this Commonwealth.

6.    Venue is proper in the Chester County Court of Common Pleas in accordance with Pennsylvania Rules of Civil Procedure 1006 and 2179 because PHRG's claims arise out of and relate to Defendant's Agreement, which contains a forum selection clause providing that arising under the Agreement be filed "exclusively in the federal or state courts in the Eastern District of Pennsylvania or Chester County, Pennsylvania." *See* **Exhibit A** at page 4, paragraph 1. Venue is also appropriate in the Chester County Court of Common Pleas because the transactions and occurrences out of which PHRG's claims arise occurred in Pennsylvania--namely Defendant's employment with PHRG. Venue is also appropriate in this Court because

---

[1] The formatting of the paragraph numbers in the Agreement are off by virtue of a glitch in the computer system that PHRG was using during the early days of the COVID pandemic. Since the paragraph numbers repeat, references herein will be to the page number and paragraph number on a particular page (*e.g.*, "page 4, paragraph 1").

*2023-04541-CT*

Defendant's tortious acts have caused harm in this County. Moreover, Defendant signed the Agreement in Chester County; Defendant performed a substantial amount of his work for PHRG in Chester County; and Defendant solicited then-current PHRG employees who work and/or reside in Chester County.

## FACTUAL BACKGROUND

### PHRG's Business

7.      Founded in 1992, PHRG has become the nation's largest, full-service, sustainable, exterior home remodeler. PHRG provides energy-saving and environmentally friendly exterior remodeling solutions for windows, siding, roofing, doors, solar roofing panels, and attic insulation to residents throughout the country. Headquartered in Chester, Pennsylvania, PHRG has offices in 17 states, and its operating territories include Arizona, Colorado, Connecticut, Delaware, District of Columbia Florida, Georgia, Indiana, Illinois, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, and Wisconsin.

8.      In the last decade, PHRG has grown from a regional home remodeling company to its current powerhouse scale by investing substantial time, money, and effort into developing its business. A primary driver of PHRG's recent rapid growth and momentum has been its significant emphasis on developing business technology.

9.      In 2019 alone, PHRG's business technology department introduced 24 new technology products to the business and added more than 30 new employees to its roster to support continued innovation. PHRG's efforts culminated in a team of more than 90 software developers and designers creating "Nitro," the company's own proprietary enterprise platform.

10.     Moreover, under PHRG's Employee Handbook, the unauthorized use or possession of property that belongs to PHRG and/or the unauthorized use or disclosure of PHRG's confidential information can result in termination.

11.     In addition, PHRG requires key employees, including the Defendant, to sign a Confidential Information, Intellectual Property and Restrictive Covenant Agreement as a condition and in consideration for employment with PHRG (the "Agreement"). The Agreement contains post-employment non-compete and non-solicitation restrictive covenants and confidentiality obligations as discussed in detail below.

12.     PHRG invests significant time, effort, and resources and takes pride in training its employees and building a positive corporate culture. PHRG spares no cost in providing resources to its employees for perks, rewards, travel, celebrations, and opportunities to bond and connect outside of work and publicly prioritizes employee happiness over profit. PHRG's efforts foster a teamwork-focused culture where employees' successes are celebrated.

**Defendant's Employment with PHRG**

13.     Defendant executed the Agreement on July 6, 2020, as a condition and in consideration of his employment with PHRG as a Remodeling Consultant.

14.     In the section of the Agreement labeled "Restrictive Covenants," Defendant specifically acknowledged that the purpose of the restrictions set forth therein was, in part, to protect the Company's trade secrets (*i.e.*, its "Confidential Information"), and that he would have "significant responsibility for the operation, administration and development" of PHRG's business. *See* **Exhibit A**, page 2, paragraph 7(a).

15.     Under the Agreement, Defendant agreed to return PHRG property and documents after his employment with PHRG ended, as outlined in the following provision:

6

*2023-04541-CT*

(a)    Upon termination of employment with the Company, or at any time if requested by the Company, Employee agrees to return to the Company, retaining no copies, any and all Company property provided to the Employee by the Company (including access cards, keys, laptops, phones, etc.) and any and all Company documents (whether hard copy/printed or electronic) reflecting Confidential Information or otherwise relating to the Company's business operations, clients, prospective clients, employees, suppliers, vendors, etc., regardless of where such items were kept or prepared.

*See* **Exhibit A**, page 1, paragraphs 5 and 6(a).

16.    In addition, under the Agreement, the Defendant agreed to the following non-competition covenant:

(b)    <u>Non-Competition</u>.  During the period commencing on the Effective Date and ending one (1) year from the date Employee's employment is terminated (the "Termination Date"), regardless of the reason for termination, Employee shall not, directly or indirectly, for his/her own benefit, or the benefit of any person or entity, enter into an employment relationship with, compete with, engage in, or be connected with, whether as an employee, agent, representative, partner, owner, consultant or otherwise, a Competing Business. For purposes of this Agreement, the term "Competing Business" shall mean any person or entity engaged in the marketing and/or sale to the residential marketplace of home improvement goods and services, including but not limited to windows, doors, siding, roofing, gutters and gutter guards, and attic insulation as well as any additional goods or services which may in the future be marketed or sold by the Company prior to Employee's Termination Date, within 75 miles of any sales and/or marketing office of the Company in existence as of the Employee's Termination Date.

*Id.* at page 3, paragraph 1(b).

17.    Defendant further agreed to the following non-solicitation/non-interference covenant:

(c)    <u>Non-Solicitation/Non-Interference</u>.  During the period commencing on the Effective Date and ending one (1) year after the Termination Date, the Employee shall not, directly or indirectly, (i) induce, or attempt to influence, any current employee or independent contractor of the Company to terminate his/her employment or contractual relationship with the Company, or any prospective employee or independent contractor of the Company not to establish an employment or contractual relationship with the Company, (ii) employ or establish a business relationship with, or encourage or assist any person or entity to employ or establish a business relationship with, any current employee or independent contractor of the Company or any person who was employed by the Company during the twelve (12) month period immediately preceding Employee's

7

*2023-04541-CT*

Termination Date, (iii) induce or attempt to induce any Customer to cease doing business, reduce or otherwise limit its business with the Company. For purposes of this Agreement, the term "Customer" shall mean any person or entity to whom the Company marketed or sold home improvement goods or services, such as windows, doors, siding, roofing, gutters and gutter guards, and attic insulation as well as any additional goods or services which may in the future be marketed or sold by the Company, during the two year period immediately preceding the Employee's Termination Date.

*Id.* at page 3, paragraph 2(c).

18.    Over the course of his employment with PHRG, Defendant obtained the benefit of specialized training provided to him by PHRG; was the repository for the goodwill that PHRG had developed with clients; benefitted from PHRG's good name and reputation; and received numerous other benefits commensurate with his position as one of PHRG's key customer-facing representatives.

19.    Stuckenschneider was a key managerial employee and part of PHRG's high-level staff of management personnel.

20.    After commencing his employment with PHRG on July 6, 2020 as a remodeling consultant, just a few months later, Stuckenschneider received a significant promotion to the position of Customer Development Team Leader. In this important leadership role, Stuckenschneider managed a group of PHRG remodeling consultants, oversaw client development strategies and helped maintain and grow client relations.

21.    In recognition of Stuckenschneider's performance and success in his role as Customer Development Team Leader, he was shifted to a direct sales role in 2021, and promoted to the position of Sales Team Leader.

22.    The position of Sales Team Leader involved significant managerial responsibility overseeing a team of sales of sales representatives who reported directly to him.

8

*2023-04541-CT*

28.    Further, as a Sales Team Leader, Stuckenschneider was also in charge of measuring and assessing the materials needed for a given job, working through price adjustments with homeowners, setting proper expectations, clearly explaining the installation process, communicating between homeowners and their HOAs to get project approval, scheduling installs, ordering materials and coordinating deliveries with customer schedules.

29.    Following his completion of the Quality Assurance training, Stuckenschneider was also responsible for meeting with homeowners during or shortly after installations were completed, ensuring the quality of finished products, addressing warranty activation and company reviews, and consultatively providing pricing and information regarding additional products and services as well as further financing options, in some cases earning additional business for the company.

30.    Stuckenschneider's accelerated growth and success at PHRG was due in large part to the access he received to all aspects of PHRG's confidential business information, including but not limited to sensitive customer and financial data, information concerning sales personel (including but not limited to the sales personnel who reported to him), the specialized training he received on PHRG's unique business processes and methods, and the other types of information to which he was exposed that give PHRG a "leg up" in the home remodeling market.

**Defendant's Termination of Employment
and Unlawful Activities Directed at PHRG's Customers, Employees and Business
Information**

31.    In November 2022, Defendant went on medical leave. Unbeknownst to PHRG at the time, Defendant upon information and belief began working for Rise while he was on medical leave.

32.    Stuckenschneider ultimately resigned on January 4, 2023.

10

33.    In connection with his resignation, Stuckenschneider represented to PHRG personnel that he was resigning so that he could move to Los Angeles to start an apparel company. He never indicated to PHRG that he had already found a new position with a competing company.

34.    Rise is a direct competitor of PHRG. Although Rise is a private company and therefore Defendant's ownership stake if any is unknown, upon information and belief Defendant owns at least a minority stake in Rise.

35.    According to its website, Rise competes with PHRG in at least the following areas associated with home remodeling: windows; doors; siding; and roofing.

36.    Rise is also utilizing -- upon information and belief based on materials Stuckenschneider removed from PHRG -- customer-prospecting materials that are eerily similar to the materials PHRG utilizes, as depicted in the following side-by-side comparisons:



11



37.    Since joining Rise, Defendant has been unfairly competing in violation of his

various obligations to PHRG.

38.    By way of example, and notwithstanding his contractual non-solicitation/non-

interference obligations, Defendant has continuously reached out to PHRG employees and

solicited them to work for Rise. The solicited sales employees include, but are not limited to:

    a.  Matt Garrett –Defendant successfully recruited Mr. Garrett from PHRG to work

       for Rise; and

    b.  Phil Haberle -- Mr. Haberle recently resigned from PHRG, reportedly to work for

       Rise.

39.    In addition to the two listed individuals above, Stuckenschneider has solicited at

least six (6) other PHRG employees.

*2023-04541-CT*

40.    Stuckenschneider has solicited these employees through direct telephone calls where he has offered them that their commission would be doubled if they left and came to work for Rise.

41.    Many of the employees that Stuckenschneider has unlawfully solicited were members of the sales team that Stuckenschneider managed while employed at PHRG.

42.    PHRG has also discovered that, prior resigning from PHRG, Defendant advised one of PHRG's customers to cancel its existing project with PHRG and to move its business to Defendant's new company, Rise.

43.    Defendant also is specifically targeting PHRG's customer/homeowners by knocking on their doors a day after PHRG met with them to solicit their business for Rise.

44.    Finally, Defendant has failed to return the documents and information PHRG entrusted to him following his employment termination. Upon information and belief, Defendant retained/copied various PHRG materials that he is using on behalf of Rise. Upon information and belief, these materials include, but are not limited to, copies of proposals, customer lists and pricing documents. PHRG's investigation in this regard is continuing.

**COUNT I**
**BREACH OF CONTRACT**

45.    The foregoing paragraphs are incorporated by reference as if set forth herein.

46.    As explained more fully above, PHRG provided consideration for Defendant's Agreement with PHRG.

47.    PHRG has satisfied all conditions precedent to its obligations to Defendant under the Agreement.

48.    As set forth above, the post-employment restrictive covenants in the Agreement were intended to protect PHRG's trade secrets.

13

*2023-04541-CT*

49.    Moreover, Defendant was a key managerial employee and part of the staff of other executive and management personnel.

50.    As explained above, Defendant has breached the terms of his Agreement with PHRG, including but not limited to the provisions relating to the return of PHRG property, *see* **Exhibit A**, page 1, paragraphs 5 and 6(a); the provisions relating to non-competition, *Id*. at page 3, paragraph 1(b); and the provisions relating to non-solicitation and non-interference with PHRG's customers and employees, *Id*. at page 3, paragraph 2(c).

51.    As a direct and proximate result of Defendant's conduct, PHRG has suffered damages in in amount to be determined at trial.

## COUNT II
## BREACH OF FIDUCIARY DUTY

52.    The foregoing paragraphs are incorporated by reference as if set forth herein.

53.    By virtue of Defendant's key role at PHRG, he owed PHRG an independent fiduciary duty to act in the best interests of the company during his employment. This duty arose outside of the context of his Agreement and through Defendant's employment relationship with PHRG and PHRG's customers. Defendant agreed and acknowledged these non-contractual duties in commencing his employment with PHRG and PHRG placed its trust in Defendant by exposing him to direct contact with PHRG's customers. PHRG trusted that Defendant would act in PHRG's best interests, and PHRG was dependent on the trust that it placed in Defendant to act in PHRG's best interests.

54.    Defendant used his access at PHRG to obtain PHRG's customer and business information including, but not limited to, its "button up sales offerings," project proposal sheets, scripting, marketing slogans, employment agreements, website headers, and pricing comparison

14

*2023-04541-CT*

documents and has used that information to undermine and take PHRG's business opportunities in violation of Pennsylvania law.

55.    Upon information and belief, during the time when Defendant was still employed by PHRG, Defendant actively acted against PHRG's best interests by soliciting existing PHRG customers to terminate their relationship with PHRG and move over to Defendant's new company, Rise. Thus, during the final months of Defendant's employment with PHRG his loyalties were transferred from his employer, PHRG, to PHRG's competitor, Rise.

56.    Defendant's actions are in breach of the fiduciary duties he owed to PHRG, including the duty of loyalty, which required him to refrain from competing with PHRG and from taking action on behalf of, or otherwise assisting, PHRG's competitors throughout the duration of his employment, and refrain from using information belonging to PHRG for his own benefit or for the benefit of a third party, like Rise.

57.    Defendant intentionally failed to act in good faith and solely for the benefit of PHRG in all matters for which he was employed.

58.    PHRG has suffered, and will continue to suffer, damages including monetary damages, attorneys' fees, and costs, as a direct result of Defendant's unlawful activities.

## COUNT III
## CONVERSION

59.    The foregoing paragraphs are incorporated by reference as if set forth herein.

60.    Upon information and belief, Defendant unlawfully converted PHRG's property to Rise, a direct competitor.

61.    Upon information and belief, Defendant maintained PHRG's property following the termination of his employment and has used and/or is using for Rise's use and benefit.

2023-04541-CT

62.    Defendant did not and does have consent to possess and/or use PHRG's property following the termination of his employment with PHRG and his continued possession of that property was and is without lawful justification.

63.    PHRG has suffered, and will continue to suffer, damages including monetary damages, attorneys' fees, and costs, as a direct result of Defendant's unlawful activities.

## COUNT IV
## UNFAIR COMPETITION

64.    The foregoing paragraphs are incorporated by reference as if set forth herein.

65.    PHRG developed its customer-prospecting materials including, but not limited to, its "button up" service offering and was selling this service to its customers for a number of years.

66.    The customer-prospecting materials including, but not limited to, the "button up" service offering has been a staple of PHRG's line of services and PHRG has a valid, advantageous, profitable business relationship with its customers, and an expectancy that the relationship and its mutual benefits would continue through this service offering.

67.    Stuckenschneider knew of and acknowledged the existence of PHRG's service offerings through his high level leadership position as a sales manager and sold PHRG's "button up" offering to PHRG's customers.

68.    Upon information and belief, Stuckenschneider retained PHRG's customer-prospecting materials following his resignation and is now offering customer-prospecting materials that are eerily similar to the materials PHRG utilizes for his new employer.

69.    Stuckenschneider is directly benefitting from his unlawful removal and retention of PHRG's customer-prospecting materials for his own benefit.

16

*2023-04541-CT*

70.     Upon information and belief, Stuckenschneider has directly communicated with PHRG's customers in an attempt to cast doubt on PHRG's ability to supply services reliably and interfere with PHRG's broader standing in the marketplace.

71.     Additionally, Stuckenschneider is selling PHRG's customer-prospecting materials as his own and for his own benefit.

72.     In doing so, Stuckenschneider made unlawful use of PHRG's confidential and sensitive business information, namely, PHRG's customer-prospecting materials.

73.     These actions constitute unfair methods of competition.

74.     PHRG has suffered damages resulting from Stuckenschneider's interference with its customers, including but not limited to lost profits that PHRG would have received from the exclusive use of its own developed customer-prospecting materials and damage to its goodwill and reputation.

## COUNT V
## UNJUST ENRICHMENT (in the alternative)

75.     The foregoing paragraphs are incorporated by reference as if set forth herein.

76.     PHRG conferred substantial benefits on Defendant through giving Defendant access to PHRG's proprietary information, including pricing and customer information. Defendant knowingly and willingly accepted and enjoyed the access to this information and other benefits from/during his employment with PHRG.

77.     Defendant knew, or should have known, that the proprietary information, including pricing and customer information, was provided to him by PHRG with the expectation that he would use it to benefit PHRG's business through sales to customers.

78.     Upon information and belief, Defendant has used this proprietary information, including pricing and customer information, on behalf of and for the benefit of Rise, without

17

*2023-04541-CT*

conferring any benefit back on PHRG. As such, it would be inequitable for Defendant to retain the benefit of PHRG's proprietary information, including pricing and customer information, under these circumstances.

79.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to PHRG. PHRG is entitled to recover from Defendant all amounts wrongfully earned by Defendant, plus interest thereon.

80.    PHRG has suffered, and will continue to suffer, damages including monetary damages, attorneys' fees, and costs, as a direct result of Defendant's unlawful activities.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Power Home Remodeling, LLC, demands judgment in its favor and against Defendant and respectfully requests the following relief:

A. Actual damages as may be established at trial, including compensatory damages, as well as incidental and consequential damages, exemplary and/or punitive damages, and any other damages as permitted by law;

B. PHRG's reasonable attorneys' fees, costs of suit, and expenses; and

C. Such other relief as this Court deems appropriate.

Respectfully submitted,

**DUANE MORRIS LLP**

Dated: June 27, 2023

/s/ *Bryan N. Shapiro*

Lawrence H. Pockers, Esq. (PA No. 84589)
Bryan Shapiro, Esq. (PA No. 329241)
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000

18

*2023-04541-CT*

Fax: (215) 979-1020
Email: lhpockers@duanemorris.com
        bshapiro@duanemorris.com

*Attorneys for Plaintiff*
*Power Home Remodeling Group, LLC*

19

*2023-04541-CT*

**DUANE MORRIS LLP**
By:    Lawrence H. Pockers, Esq. (PA No. 84589)
Bryan Shapiro (PA No. 329241)
30 South 17th Street
Philadelphia, PA 19103
Tel: (215) 979-1000
Fax: (215) 979-1020
Email: lhpockers@duanemorris.com
bshapiro@duanemorris.com

*Attorneys for Plaintiff*
*Power Home Remodeling Group, LLC*

| | |
|---|---|
| **POWER HOME REMODELING GROUP, LLC,** a Pennsylvania limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>**JON STUCKENSCHNEIDER,**<br><br>Defendant. | IN THE COURT OF COMMON PLEAS CHESTER COUNTY, PENNSYLVANIA<br><br>CIVIL ACTION<br><br>NO. _____<br><br>**JURY TRIAL DEMANDED** |

## VERIFICATION

I, Kevin Doyle, hereby state that I am authorized to sign this verification on behalf of Plaintiff, Power Home Remodeling Group, LLC, in my role as Power Home Remodeling Group, LLC's Vice President of Sales, and that the statements contained in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief.

These statements are made subject to the penalties of 18 Pa.C.S.A § 4904, relating to unsworn falsification to authorities.

Dated: 6/23/2023

Kevin Doyle

*2023-04541-CT*