IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **POWER HOME REMODELING GROUP, LLC,**<br><br>*Plaintiff,*<br><br>v.<br><br>**JON STUCKENSCHNEIDER,**<br><br>*Defendant.* | **Case No. 2:23-cv-02880-JDW** |

## MEMORANDUM

In 2023, Jon Stuckenschneider left his employment with Power Home Remodeling Group LLC ("PHRG") and began working for a company he founded, Rise Renovations LLC. PHRG claims that Rise's products are just the Flaming Moe to its Flaming Homer.[1] That is, a copy. But unlike Homer, PHRG didn't give away its secrets; it tried to protect them. So PHRG sued Mr. Stuckenschneider. It now wants to amend its Complaint to add claims under the Lanham Act and to add Rise and two other former employees who have joined Rise. PHRG has made a showing sufficient to satisfy the liberal policy in favor of amended pleadings. I will therefore permit it to file its proposed Amended Complaint, with one clarification so that the pleading conforms to the claims that PHRG says that it intends to assert.

---

[1] *See The Simpsons: Flaming Moe's* (Fox Television Broadcast Nov. 21, 1991).

I.  **BACKGROUND**

PHRG is "the nation's largest, full-service, sustainable, exterior home remodeler" with offices in 17 states and, relevant here, operating in Colorado. (ECF. No. 1 ¶ 7.) PHRG has registered and owns the word marks "POWER" and "POWER HOME REMODELING GROUP" and uses those registered marks in connection with its business. (ECF No. 15-8 ¶¶ 10-12.)

Jon Stuckenschneider worked for PHRG from June 6, 2020, until January 3, 2023. After Mr. Stuckenschneider resigned, he began working for a direct competitor based in Colorado: Rise Renovations, LLC. He solicited other PHRG employees to join him at Rise. He held onto PHRG's confidential business materials, which he used to fashion Rise's marketing materials.

On June 27, 2023, PHRG sued Mr. Stuckenschneider for breach of contract, breach of fiduciary duty, conversion, unfair competition, and unjust enrichment.[2] PHRG alleges that Mr. Stuckenschneider breached three provisions of his employment contract: (a) a confidentiality provision that required the return of all PHRG confidential information upon termination of employment; (b) a non-compete agreement that barred him from working for a competitor for one year after termination; and (c) a non-solicitation

---

[2] PHRG filed in Chester County Court of Common Pleas, and Mr. Stuckenschneider removed it to this Court. At the Rule 16 Conference, I asked the parties whether I have diversity jurisdiction, and that remains an open question. However, if I permit the amended complaint, I will have federal question jurisdiction and won't have to resolve questions about subject matter jurisdiction.

2

agreement that prohibited him from soliciting PHRG employees to leave their employment. PHRG also alleges that he engaged in unfair competition on behalf of a direct competitor.

PHRG seeks leave to amend its complaint. In its Motion, PHRG asks to add three defendants: two other former employees (Matt Garrett and Philip Haberle); and Rise. PHRG also seeks to assert new claims against all defendants under the Lanham Act, including trademark infringement, unfair competition, false designation of origin, and false trademark association.

As alleged in the proposed Amended Complaint, Mr. Stuckenschneider, Mr. Garrett, and Mr. Haberle work for and assist Rise in a pattern of unfair competition. Rise "markets and sells identical products … in the same geographic locations as, and directly competes with, PHRG." (ECF No. 15-8 ¶ 92.) In Colorado, Rise's sales representatives wear shirts with PHRG's logo or a substantially similar logo when making door-to-door sales. Rise sales associates then "provide[] the homeowners with Rise customer-prospecting materials" that look "eerily similar" to PHRG's. (*Id.* ¶¶ 76, 96.) Prospective customers have expressed confusion over those sales associates' affiliation. For example, those homeowners have asked PHRG sales representatives why PHRG "was back again even though the homeowner had met with a PHRG representative the previous day." (*Id.* ¶ 96.) In those instances, PHRG wasn't making sales in that neighborhood the prior day, leading PHRG to believe that those customers confused PHRG with Rise.

3

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 15 conditions amendment of a pleading on the Court's leave or the opposing party's written consent. The rule instructs courts to "freely give leave [to amend] when justice so requires." FED. R. CIV. P. 15(a)(2). This liberal amendment regime helps effectuate the "general policy embodied in the Federal Rules favoring resolution of cases on their merits." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). Relevant here, a court may deny leave to amend based on "futility." *Foman v. Davis*, 371 U.S. 178 (1962).

"'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Travelers Indem. Co. v. Dammann & Co., Inc.*, 594 F.3d 238, 243 (3d Cir. 2010) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). In determining whether a claim would be futile, "the district court applies the same standard of legal sufficiency as applies under [Federal] Rule [of Civil Procedure] 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).

### III.     DISCUSSION

Mr. Stuckenschneider argues that PHRG's proposed Amended Complaint is futile because it (A) does not adequately assert personal jurisdiction over Rise, and (B) fails to state any claim under the Lanham Act.

### A.     Personal Jurisdiction

The requirement of personal jurisdiction stems from the Due Process Clause as a matter of protecting an individual's liberty. *See Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982). Because this is an individual right, a defendant may decide to waive his defense of personal jurisdiction. *See id.* at 703. Until that defendant enters a timely objection to personal jurisdiction under Rule 12(h)(1), a court won't know if the defendant has chosen to assert that defense. Therefore, "a *sua sponte* dismissal for lack of personal jurisdiction is error." *Azubuko v. E. Bank*, 160 F. App'x 143, 146 (3d Cir. 2005) (collecting cases).

As a proposed co-defendant, Rise hasn't entered an appearance in this case. It is Mr. Stuckenschneider who objects to personal jurisdiction on behalf of Rise. He argues that Rise doesn't have the necessary minimum contacts with Pennsylvania such that personal jurisdiction over Rise is just. Even if Mr. Stuckenschneider has standing to make that argument (a doubtful proposition), I cannot "consider[] lack of personal jurisdiction as a basis for … ruling that amendment [is] futile." *Id.* At this point, I don't need to analyze Rise's contacts with Pennsylvania because Rise may decline to challenge personal

5

jurisdiction. If Rise enters this case and raises a personal jurisdiction challenge, I will address it then.

### B.     Lanham Act Claims

#### 1.     False advertising

Mr. Stuckenschneider argues that PHRG hasn't pled the elements of its proposed false advertising claim under the Lanham Act. In response, PHRG states that Mr. Stuckenschneider "misapprehends" the proposed Amended Complaint which doesn't assert a claim for false advertising. (ECF No. 17 at 10.) Instead, PHRG declares that it is only asserting claims under 15 U.S.C. § 1125(a)(1)(A).

PHRG's response is puzzling given the text of its proposed Amended Complaint. Count VII, for example, asserts a claim of unfair competition, false designation of origin, and *false advertising*. There are other mentions of "false advertising" throughout the proposed pleading. (*See, e.g.*, ECF No. 15-8 at 2 ("Rise … has engaged in … false advertising"); *id.* ¶¶ 162, 167.) On its face, the proposed Amended Complaint appears to assert a false advertising claim. I will therefore require that PHRG revised its Amended Complaint with its representation that it is not bringing a false advertising claim before filing it.

#### 2.     Trademark infringement and unfair competition

I measure PHRG's claims of Trademark Infringement (Count V), Unfair Competition, False Designation of Origin, and False Association (Count VII) under identical standards.

*See A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). PHRG must plead that "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *Id.* The "use" of the mark must be "in commerce" to fall under the purview of the Lanham Act. 15 U.S.C. § 1125(a)(1).

### a. Commerce

The Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. Congress may regulate even "purely intrastate activity if that activity substantially affects interstate commerce." *Highmark, Inc. v. UPMC Health Plan, Inc.*, 276 F.3d 160, 165 (3d Cir. 2001) (citing *United States v. Lopez*, 514 U.S. 549, 558–59 (1995)); *see also Gonzales v. Raich*, 545 U.S. 1, 17 (2005). Courts construe this requirement "broadly." *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990). Thus, "intrastate infringing use is within the provisions of the [Lanham] Act if it has a substantial economic effect upon interstate use by the mark's owner." *See World Carpets, Inc. v. Dick Littrell's New World Carpets,* 438 F.2d 482, 488–89 (5th Cir. 1971). In other words, when a "defendant's conduct … diminish[es] the plaintiff's ability to control use of the mark, thereby affecting the mark and its relationship to interstate commerce[,]" the commerce requirement is met. *Mifflinburg Tel., Inc. v. Criswell*, 277 F. Supp. 3d 750, 805 (M.D. Pa. 2017).

PHRG has pled that the Defendants' activity is "in commerce" for purposes of the Lanham Act. Though the proposed Amended Complaint only describes the Defendants' actions within Colorado, that intrastate activity "substantially affects interstate commerce." *Highmark, Inc.*, 276 F.3d at 165. As alleged, Defendants' intrastate activity harms PHRG's business. Those activities "have and are likely to cause confusion … as to the source of Rise's goods or services and Rise's association with PHRG." (ECF No. 15-8 ¶ 163). This impedes PHRG's ability to control its mark. *See Mifflinburg Tel., Inc.*, 277 F. Supp. at 805. Because PHRG operates on a nationwide scale, injury to PHRG's business in Colorado would have a knock-on effect on PHRG's business in other states.

### b.     Likelihood of confusion

There is a likelihood of confusion if "consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 280 (3d Cir. 2001) (citation omitted). PHRG's proposed Amended Complaint alleges facts that establish such confusion.

Mr. Stuckenschneider's argument rests on a case that is distinguishable on its facts. *See Wakefern Food Corp. v. Marchese*, No. 2:20-CV-15949-WJM-MF, 2021 WL 3783259, at *4 (D.N.J. Aug. 26, 2021). In that case, the plaintiff brought a claim of trademark infringement under the Lanham Act after the defendant contacted a real estate broker and falsely claimed an association with plaintiff's brand to secure a commercial space. The

court held that under these facts, defendant did not use plaintiff's mark at all. *See id.* at *3. But the court took pains to distinguish the conduct at-issue from a situation where a defendant sold or promoted *his own services* using a plaintiff's mark. *Id.* at *4 ("[T]here are no allegations that Defendant has ever offered, distributed, possessed sold, or advertised any goods or services of any kind bearing or imitating Plaintiff's marks"). And that's the exact situation that PHRG's complaint describes.

As alleged, Rise's employees wear PHRG's mark or something close to it when making door-to-door sales and promoting Rise's business. Further, when talking to customers, Rise utilizes marketing materials "that are nearly identical to the PHRG materials." (ECF No. 15-8 ¶¶ 79, 96.) PHRG further alleges that there's been confusion among customers who have "questioned why PHRG was coming to their home on two consecutive days." (*Id.* ¶ 101.) Contrary to Mr. Stuckenschneider's interpretation of the proposed Amended Complaint, there are factual allegations beyond the logo on Rise representatives' uniforms that establish a likelihood of confusion. At this stage, that's sufficient.

## IV. CONCLUSION

I will allow PHRG to file its proposed Amended Complaint, after it excises mentions of a false advertising claim. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

February 5, 2024