IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **POWER HOME REMODELING GROUP, LLC**, <br><br> *Plaintiff,* <br><br> v. <br><br> **JON STUCKENSCHNEIDER et al.**, <br><br> *Defendants.* | **Case No. 2:23-cv-02880-JDW** |

### MEMORANDUM

In litigation, like any competition, the consensus is that home field advantage matters. In many competitions, the benefit is familiarity. You play at home, you sleep in your own bed, and you don't disrupt your daily routine. In litigation, there's some of that. But it's also about expense and inconvenience. It's much easier to go to court and to stay involved with a case that's happening in your backyard than one that's happening across the country. In this case, Power Home Remodeling Group, LLC ("PHRG") wants its claims against Rise Renovation, LLC to proceed in Pennsylvania, where PHRG has its headquarters, far from Rise's home base in Colorado. But the events giving rise to PHRG's claims against Rise happened in Colorado. So, if PHRG wants to pursue its claims against Rise, it will have to do so on Rise's home turf, not here.

I.   **BACKGROUND**

   A.   **Factual Background**[1]

PHRG is "the nation's largest, full-service, sustainable, exterior home remodeler" with offices in seventeen states, including Colorado. (ECF No. 23 ¶ 10.) PHRG's headquarters are in Pennsylvania. Jon Stuckenschneider, Matt Garrett, and Philip Haberle (collectively, the "Individual Defendants") are former PHRG employees who resigned in 2023. As a condition of their employment, the Individual Defendants signed agreements with PHRG that contained Pennsylvania forum selection clauses.

On June 28, 2022, while still in PHRG's employ, Mr. Stuckenschneider, Mr. Garrett, and another co-owner formed Rise, which is a Colorado LLC with its principal place of business in Denver. Like PHRG, Rise offers home remodeling and renovation services. However, it offers these services only in the Denver metropolitan area. Rise is not registered to do business in Pennsylvania and has no business, advertisements, office, or employees here. In Colorado, Rise "markets and sells identical products … in the same geographic locations as, and directly competes with, PHRG." (*Id.* ¶ 94.) Rise's sales representatives wear shirts with PHRG's logo or a substantially similar logo when making door-to-door sales. Rise's sales associates then "provide[] the homeowners with Rise customer-prospecting materials" that look "eerily similar" to PHRG's. (*Id.* ¶¶ 80, 98.)

---

[1] I draw the factual recitation from PHRG's Amended Complaint and Rise's Affidavit Of Nick Ventura which, for the purpose of this Motion, I accept as true.

2

Prospective customers have expressed confusion over those sales associates' affiliation. For example, homeowners have asked PHRG sales representatives why PHRG "was back again even though the homeowner had met with a PHRG representative the previous day." (*Id.* ¶ 98.) In those instances, PHRG wasn't making sales in that neighborhood the prior day, leading PHRG to believe that those customers confused PHRG with Rise.

Prior to their respective resignations from PHRG, the Individual Defendants "downloaded PHRG's sales presentations, sales scripts and other materials on multiple occasions" for use on Rise's behalf. (*Id.* ¶ 78.) PHRG created and electronically stored these materials in Pennsylvania. It alleges the Individual Defendants are using them "to undermine and take PHRG's business opportunities," including "to solicit and go after PHRG's customers in the Colorado territory." (*Id.* ¶ 82.) Rise's efforts have affected PHRG's business in Colorado. Mr. Stuckenschneider successfully solicited a PHRG customer in the Denver area to hire Rise for home renovation work. He also advised at least one PHRG customer to move its business to Rise.

B. **Procedural History**

On June 27, 2023, PHRG sued Mr. Stuckenschneider for breach of contract, breach of fiduciary duty, conversion, unfair competition, and unjust enrichment. Mr. Stuckenschneider timely removed the case to this Court. On February 5, 2024, I granted PHRG's motion to amend its Complaint. In its Amended Complaint, PHRG adds two former PHRG employees and Rise as defendants. PHRG also asserts new claims against all

defendants under the Lanham Act, including trademark infringement, unfair competition, false designation of origin, and false trademark association. On May 3, 2024, Rise filed a motion to dismiss the Amended Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). PHRG responded, and the Motion is ripe for disposition.

## II.    LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. *See Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The court's review of a motion to dismiss under Rule 12(b)(2) is not limited to the pleadings, and the court may rely on sworn affidavits submitted by the parties or other competent evidence. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009). In the absence of an evidentiary hearing, the plaintiff need only present a *prima facie* case of personal jurisdiction, and the court must take all the plaintiff's factual allegations as true and resolve all factual disputes in the plaintiff's favor. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010). The burden then shifts to the defendant to establish that the exercise of jurisdiction would be unreasonable. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 150 (3d Cir. 1992).

### III. ANALYSIS

#### A. This Court Cannot Exercise Personal Jurisdiction Over Rise

For cases that arise under federal question jurisdiction, there are two possible approaches to determining personal jurisdiction. If a statute authorizes nationwide service of process, then courts look at a defendant's contacts with the United States as a whole. *See Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 369 (3d Cir. 2002). For statutes that do not authorize such service, courts look to state law to determine whether a defendant is subject to personal jurisdiction in the forum. *See, e.g.*, *Travers v. FedEx Corp.*, 584 F. Supp. 3d 1, 6 & n.31 (E.D. Pa. 2022). Congress does not authorize nationwide service of process in the Lanham Act. I therefore must look to Pennsylvania law to determine whether Rise is subject to personal jurisdiction in Pennsylvania.

Pennsylvania's long arm statute permits a court in Pennsylvania to exercise jurisdiction to the full extent allowable under the 14th Amendment's Due Process Clause. *See* 42 Pa.C.S.A. § 5322. Under the 14th Amendment, personal jurisdiction over an out-of-state defendant requires that the defendant have "minimum contacts" with the forum state such that exercising jurisdiction would "not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Personal jurisdiction can arise under two distinct theories: general jurisdiction and specific jurisdiction. *See Metcalfe*, 566 F.3d at

334. PHRG contends that this Court has general and specific personal jurisdiction over Rise. I disagree.

### 1. General jurisdiction

Corporations, including LLCs, are subject to general jurisdiction in their state of incorporation and where they maintain their principal place of business. *See Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). They may also be subject to general jurisdiction where their "affiliations with the State are so 'continuous and systematic' as to render [them] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe Co.*, 326 U.S. at 317) ("*Goodyear*").

Rise exists under Colorado law and maintains its principal place of business in Denver, so neither place confers general jurisdiction in Pennsylvania. Instead, PHRG relies on Rise's contact with Pennsylvania from the time of its formation until the Individual Defendants resigned. During that period, the Individual Defendants allegedly misappropriated PHRG's business materials to further Rise's interests. However, this contact is not so "continuous and systematic" as to render Rise "essentially at home" in Pennsylvania. *Goodyear*, 564 U.S. at 919. Rise may have used materials created and electronically stored by PHRG in Pennsylvania. But even then, Rise was using those materials while "at home" in Colorado, the state where it operates. It has no business, advertisements, offices, or employees in Pennsylvania. General jurisdiction is therefore inappropriate.

### 2. Specific jurisdiction

When a plaintiff alleges intentional torts, I must consider whether specific jurisdiction is proper under two tests: the *Calder* effects test and the traditional test as applied in *Ford Motor*. *See Hasson v. FullStory, Inc.*, 114 F.4th 181, 197 (3d Cir. 2024); *Calder v. Jones*, 465 U.S. 783 (1984); *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021). Courts must "evaluate specific jurisdiction on a claim-by-claim basis." *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). PHRG fails to establish personal jurisdiction under either approach for any of its claims against Rise.

#### a. *Calder* effects test

In the Third Circuit, a plaintiff satisfies *Calder* if it shows that (i) "[t]he defendant committed an intentional tort," (ii) "[t]he defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity," and (iii) "[t]he plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort." *Marten*, 499 F.3d at 297. PHRG alleges intentional torts, but the Parties dispute the second and third *Calder* factors.

PHRG cannot establish that Rise expressly aimed its tortious conduct at Pennsylvania because the actions underlying this suit took place in Colorado. Colorado is Rise's state of formation and principal place of business. And Rise employees were using PHRG's materials to solicit business in neighborhoods in Colorado, not Pennsylvania.

Therefore, to the extent that Rise engaged in tortious conduct, it occurred in Colorado and Colorado is "the focal point of the tortious activity." *Id.*

PHRG claims that it foreseeably felt the impact of Rise's conduct at its headquarters in Pennsylvania, which is its "financial nucleus." (ECF No. 23 ¶ 145.) But that's not enough to demonstrate that Rise directed its activity at Pennsylvania. *See IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 265 n.8 (3d Cir. 1998); *see, e.g.*, ECF No. 23 ¶ 145 ("Rise has willfully and maliciously infringed PHRG's registered trademarks … causing a foreseeable injury to PHRG in Pennsylvania, its financial nucleus."). Nor does it establish that Pennsylvania was the "focal point of [PHRG's] harm." *Marten*, 499 F.3d at 297. Rise used the materials that it allegedly acquired from PHRG to go after Colorado contracts. So, to the extent that Rise solicited and targeted PHRG customers, PHRG experienced the "brunt" of that harm at its Colorado office, not its Pennsylvania headquarters. *See IMO Industries, Inc.*, 155 F.3d at 263.

This analysis applies to each of the claims that PHRG asserts against Rise, and none of PHRG's claim-specific arguments persuades me otherwise. *First*, PHRG's trademark infringement, unfair competition, false designation of origin, misappropriation of trade secrets, and conversion claims against Rise (Counts V, VI, VII, IX, X, and XII) rest on contacts between **PHRG** and Pennsylvania, not Rise and Pennsylvania. PHRG points to the fact that it registered its trademarks and developed its trade secrets in Pennsylvania. The creation of that intellectual property in Pennsylvania doesn't demonstrate anything about where

8

Rise targeted its conduct, though. *See NFIP, LLC v. Nifty Fiftys*, No. 21-cv-1300, 2021 WL 3562852, at *4 (E.D. Pa. Aug. 12, 2021). While PHRG contends that Rise downloaded and used this trademarked or otherwise secret information, it doesn't allege that Rise did so in Pennsylvania. Nor does it matter that PHRG felt the impact of that conduct at its headquarters in Pennsylvania. *See IMO Industries, Inc.*, 155 F.3d at 265 n.8.

PHRG also alleges that Rise copied this trademarked and secret information from PHRG's Pennsylvania-based document system. Even so, "intentional torts . . . committed via the Internet or other electronic means present … very different questions [of] whether and how a defendant's virtual presence and conduct translate into contacts with a particular State." *Hasson*, 114 F.4th at 191 (quoting *Walden v. Fiore*, 571 U.S. 277, 290 n.9 (2014)). Rise's access to a Pennsylvania-based system doesn't establish that Rise aimed its conduct at Pennsylvania because sending a request to a system hosted in another state is not "an intentional physical entry into the forum" that gives rise to personal jurisdiction. *Id.*

*Second*, to the extent Rise interfered with PHRG's employment agreements with the Individual Defendants, it did so in Colorado, where they worked. PHRG points to the fact that the agreements elect Pennsylvania law and include Pennsylvania forum selection clauses. But Rise, of course, isn't subject to those forum selection clauses or choice of law provisions. The economic reality of Rise's conduct is that it took place in Colorado, and the fact that the Individual Defendants might have to litigate their disputes with PHRG in

Pennsylvania doesn't change that fact or show that Rise directed conduct at Pennsylvania when it employed the Individual Defendants.

Because the factual events and their impacts took place in Colorado, PHRG cannot make out the second or third prong of the *Calder* effects test. To find otherwise would "carve out a special intentional torts exception to the traditional specific jurisdiction analysis, so that a plaintiff could always sue in his or her home state," which the Third Circuit rejected as *Calder*'s import. *IMO Industries, Inc.*, 155 F.3d at 265.

### b. Traditional test

The traditional test requires PHRG to show that Rise "purposefully avail[ed] itself of the privilege of conducting activities in Pennsylvania and that [its] claims arise out of or relate to [Rise's] contacts with the forum." *Hasson*, 114 F.4th at 193 (quoting *Ford Motor*, 592 U.S. at 359). PHRG cannot satisfy this test, either. Rise does no business in Pennsylvania and has no advertisements, offices, or employees here. So PHRG's claim fails at the first step.

PHRG's claim against Rise would also fail at the second step because they do not arise out of Rise's contacts with Pennsylvania. It bears repeating that the fact that Rise might have accessed information stored on a server in Pennsylvania does not mean that Rise availed itself of the privilege of doing business in Pennsylvania. The only other conduct to which PHRG points is the possibility that Rise obtains supplies from

10

Pennsylvania. But that's divorced from the allegations in this case so it does not create a basis to assert specific jurisdiction.

### B. There's No Need For Jurisdictional Discovery

Jurisdictional discovery is appropriate when "a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite 'contacts between [the party] and the forum state.'" *Toys "R" Us v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). Even accepting PHRG's arguments as true, its allegations do not suggest with reasonable particularity that Rise has the necessary minimum contacts with Pennsylvania. Other than being the site of PHRG's headquarters, Pennsylvania appears to have little connection to PHRG's claims; Rise has no business, advertisements, office, or employees there.

PHRG has not identified specific facts that it might be able to discover that would support the exercise of personal jurisdiction. It contends that Rise may obtain "at least some of its roofing product/materials from … Pennsylvania plants" and that Rise has "mailed and/or registered warranty registrations … in Pennsylvania" for some products and accessories. (ECF No. 34 at 21.) Even if PHRG could establish these facts through discovery, that would not be enough to establish jurisdiction. Its claims do not arise from those supply agreements and warranties, nor do those supplier relationships make Rise at home in Pennsylvania. Without a showing that Rise might be subject to personal

jurisdiction in Pennsylvania, I will not subject Rise "to the expense and inconvenience of jurisdictional discovery in Pennsylvania based on such a sparse record." *Stella Maris Ins. Co. v. Cath. Health East*, No. 10-cv-1946, 2010 WL 3522106, at *7 (E.D. Pa. Sept. 8, 2010).

## IV.  CONCLUSION

If Rise wronged PHRG, it did so in Colorado, not in Pennsylvania. There's no basis to force Rise to litigate this dispute in Pennsylvania. I will therefore grant Rise's motion to dismiss.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

September 27, 2024